[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
 I. Statement of Case
The plaintiffs, DB Five, LLC and Edward J. Della Bitta, d/b/a D-B Realty Co., appeal the final decision of the Town of Southington Conservation Commission (Commission).[1] In that decision, the defendant denied the plaintiffs' application to construct a driveway across a brook and fill a portion of wetlands located on the property. CT Page 8049 This appeal is brought pursuant to General Statutes § 22a-43.
 II. Procedural Historv and Background Facts
In an application dated July 7, 2000, the plaintiffs sought approval from the defendant to construct a driveway across a brook and fill a portion of inland wetlands. (Return of Record [ROR], Exhibit 1). The development was identified by the plaintiff as Mount Vernon Estates, Section 5. (ROR, Exhibit 14). The project, as depicted on the site plan, shows the driveway running from Mount Vernon road to a proposed single family dwelling. (ROR, Exhibit 14). The application proposed the filling of 0.02 acres of wetland area. (ROR, Exhibit 1). It also contained a requirement that the completed project would result in a zero increase in surface water. (ROR, Exhibits 1 and 14). This was to be accomplished through the use of water detention basins located on a parcel of land previously developed by the plaintiff. (ROR, Exhibit 10, statement of Stephen Giudice, pp. 14 and 15).[2] That project, known as Mount Vernon Estates, Section 3, was approved by the defendant on April 17, 1997. (February 2, 2000 stipulation of fact; ROR, Exhibit 16). These detention basins are depicted on a site development and erosion and sediment control plan and identified as pond number 1 and pond number 2. (ROR, Exhibit 16). The application was reviewed and commented upon by the Southington Assistant Town Planner. (ROR, Exhibit 2). The numerous issues raised by the planner were discussed by the defendant at a public hearing held on July 20, 2000. (ROR, Exhibits 3 and 4). At the hearing, it was decided that the members of the commission would conduct an inspection of the site on August 3, 2000. (ROR, Exhibits 3 and 4). The Southington town engineer reviewed the proposed project and made numerous suggestions and comments in a memorandum dated July 26, 2000. (ROR, Exhibit 7).
The commission inspected the site on August 3, 2000. Also in attendance were the plaintiff, Giudice, and Cynthia Rabinowitz, a soil scientist. On August 10, 2000 the commission conducted a regular meeting to discuss and vote upon numerous proposed projects including the plaintiffs'. The commission discussed the proposal and heard the comments of Giudice and the commission's attorney. A vote was taken and the application was denied. (ROR, Exhibits 10, 11 and 12). The plaintiffs were provided written notification of August 10, 2000 decision through letter dated August 17, 2000. (ROR, Exhibit 13).
The plaintiffs commenced this administrative appeal in the superior court through complaint filed in the judicial district of New Britain on September 5, 2000. This appeal is brought pursuant to General Statutes § 22a-43.
 III. Jurisdiction
CT Page 8050
Aggrievement and Timeliness of Appeal
General Statutes 22a-43 provides in pertinent part, "any person aggrieved by any . . . order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive. . . . may, within the time specified in subsection (b) of section 8-8 . . . appeal to the superior court. . . ." General Statutes § 8-8(b) states in part "any person aggrieved by any decision of a board may take an appeal to the superior court. . . . The appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published. . . ."
In the present matter, the plaintiffs' application for permission to perform work within the regulated area was denied by the commission. The commission in this appeal has not challenged aggrievement or the timeliness of the appeal. Thus, this court finds that the plaintiffs are aggrieved and the appeal is timely.
 IV. Standard of Review In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision.
In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation CT Page 8051 on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .
(Citations omitted; internal quotation marks omitted) Samperi v. InlandWetlands Agency, 226 Conn. 579, 587-588 (1993); see also Keiser v.Conservation Commission, 41 Conn. App. 39 (1996).
 V. Discussion
The plaintiffs in their September 1, 2000 complaint have raised four specific claims of administrative error. (Complaint, paras. 8a-8d). However, in their January 8, 2001 Brief, the plaintiffs have only addressed a portion of these claims. This court will only discuss those claims which have been briefed; all others are deemed abandoned. Collinsv. Goldberg, 28 Conn. App. 733, 738 (1992).
The plaintiffs in their January 8, 2001 brief contend that "[t]he subject application proposes minimal impact on the wetlands, however, the Commission has used the permit process as an opportunity to penalize the Plaintiff for what it deemed as unacceptably slow completion of a prior section of the subdivision. . . .[3] There is no evidence on the record that the ponds will be impacted by the proposed activity. . . . The Commission failed to review the application in accordance with the statutory criteria. . . . There is no evidence on the record that the subject application will result in increased volume or velocity of water into the brook. . . . The testimony of Mr. Giudice provides credible evidence that the design of the crossing and the diameter and length of the proposed pipes would be effective in accommodating the water flow." (Plaintiffs' January 8, 2001 Brief, pp. 6-7).
The commission, in its February 20, 2001 brief, responds by stating CT Page 8052 that it "clearly acted within the scope of its authority, considering factors authorized by statute. . . . The record discloses sufficient evidence of issues of environmental and safety concerns . . . to uphold their decision." (Defendant's February 20, 2001 Brief, p. 4).
The court's analysis must begin with an examination of the pertinent statutes and their legislative purpose. The Inland Wetlands and Watercourses Act is contained within General Statutes § 22a-36 to22a-45, inclusive.
 The legislative purpose of the act is described in General Statutes § 22a-36, which contains the legislative finding regarding wetlands. The act was designed to protect and preserve the "indispensable and irreplaceable but fragile natural resources of inland wetlands "by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology. . . ." General Statutes § 22a-36. Instead of banning all economic activities on wetlands, the legislature realized that a balance had to be struck between economic activities and preservation of the wetlands. . . .
 The legislature, therefore, created an orderly statutory scheme whereby each municipality is required to "establish an inland wetlands agency or authorize an existing board or commission to carry out the provisions of [the act]. . . ." General Statutes § 22a-42(c). The local inland wetlands agency was given the sole authority to license and regulate wetland activities, consistent with the factors set forth by the legislature in § 22a-41. By designing the statutory scheme in this manner, the legislature gave broad discretion to local agencies to oversee wetland activities. . . . The legislature, in effect, has placed the initial and principal responsibility for striking the balance between economic activities and preservation of wetlands in the hands of the local authorities.
(Citations omitted; footnotes omitted; internal quotation marks omitted). Samperi v. Inland Wetlands Agency, supra, 226 Conn. 591-92.
In fulfilling the purposes of the act, the legislature through the enactment of General Statutes § 22a-41 has created a non-exclusive CT Page 8053 list of factors which must be considered along with "all [other] relevant facts and circumstances."[4] The defendant maintains that the commission's denial of the application was specifically based upon three of the enumerated statutory factors as follows:
 (1) The environmental impact of the proposed regulated activity on wetlands or watercourses;
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; and
 (6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses.
(General Statutes § 22a-41) (Defendant's February 20, 2001 Brief, pp. 2-5)
An examination of the administrative record reveals that the commission discussed the proposed project at a meeting on July 20, 2000. (ROR, Exhibits 3 and 4). The participants included, among others, the town planner and Giudice. A discussion of the requirement for a zero increase in runoff was discussed in connection with the role of the detention basins located on the section 3 property. (ROR, Exhibit 4, p. 3). The commission also identified the two pipes to be utilized at the stream crossing. (ROR, Exhibit 4, p. 3). Thereafter, on August 3, 2000, the commission examined the site. At the time of the inspection the "Commissioners expressed concern about the brook in this particular area and its tendency to rechannelize itself. In discussion of the driveway crossing, S. Giudice explained that it would be accomplished at the narrowest stream channel and lowest part of the lot. A discussion of pipe materials ensued. The Commission was also concerned with buffer and wetland proximity to the proposed house inasmuch as homeowners might disturb the area to increase yard size."[5] (ROR, exhibit 8, pp. 1-2; see also ROR, Exhibit 9).
At the August 10, 2000 meeting, the commission met and discussed the proposal at length. Commissioner Ramsay commented that "I think that this proposal has a lot of problems . . . both the small pond and the large pond are in such bad shape, that if we create a crossing and we increase CT Page 8054 the velocity and volume of that stream, we're creating a problem twice as bad as what's already there, with additional water in heavy flow periods. Any time you have heavy flow. And, when we encounter freezes, surface freezes, the water is going to run right along the top of that land and get into those ponds out of that twin pipe quickly." (ROR, Exhibit 11, p. 6). In response to this comment, Giudice acknowledged that "[t]here are some problems with the pond" but they would be corrected. (ROR, Exhibit 11, pp. 6 and 10).
It is clearly evident that the commission was displeased with the plaintiffs' work in connection with Mount Vernon Estates, section 3, but it was arguably appropriate to comment on the previous section 3 project because of its interrelationship with the proper functioning of the section 5 project under consideration. The commission noted this relationship in its brief when it indicated that it "was concerned with the environmental impact of the proposed activity on already dysfunctional detention basins and ponds." (Defendant's February 20, 2001 Brief, p. 4). Commissioner Ramsay further stated, "I don't think that this application, it's valid to approve it and increase the liability downstream." (ROR, Exhibit 11, p. 7). The commission discussed the size of the two pipes proposed to be placed into the stream and their effect upon the environment and public safety. (ROR, Exhibit 11, pp. 8-9).
At the conclusion of the discussion, Commissioner Ramsay made a "motion that we deny this application because the crossing will add to the liability of the residents of Southington." (ROR, Exhibit 11, p. 11). Commissioner Montague moved to amend the motion to include as an additional reason that "it has too much of a negative impact to the stream and the unfinished detention areas which are not functioning now and will not — with an increased flow into them, will function even less than they are now." (ROR, Exhibit 11, p. 11). The amended motion was accepted and by a vote of the commissioners the application was denied. The two reasons for the denial were memorialized in a written notification to the plaintiffs dated August 17, 2000. (ROR, Exhibit 13).
Based upon this record, the court finds that there is substantial evidence to support the commissions's contention that it appropriately considered the "environmental impact of the proposed regulated activity on wetlands [and] watercourses; . . . [t]he character and degree of injury to, or interference with, safety . . . threatened by the proposed regulated activity; and [the] [i]mpacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed. . . ." General Statutes § 22a-41(1)(5)(6).
Finally, the court has examined the entire record because of the plaintiffs' claim that the commission was motivated by a bias against the CT Page 8055 plaintiffs. "Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly . . . the burden on such a claim rests upon the person asserting it." (Citations omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 537 (1987). The court finds that the plaintiffs have not met this burden. The record contains substantial evidence to support the conclusion that the application was decided upon its own merits. Accordingly, the court finds for the commission on all claims of error. This appeal is ordered dismissed.
 VI. Conclusion
For all the foregoing reasons, the court finds for the commission. The appeal is ordered dismissed.
BY THE COURT:
Peter Emmett Wiese, Judge